# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD WALKER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　　Defendants.　　　　　　／ | CASE NO. 1:09-CV-02098-SMS<br><br>ORDER DISMISSING THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM<br><br>(Doc. 18) |

Plaintiff Harold Walker, a state prisoner proceeding pro se and in forma pauperis, filed a First Amended Complaint, alleging claims pursuant to 42 U.S.C. § 1983, on March 23, 2010.  He consented to jurisdiction by a U.S. Magistrate Judge on December 14, 2009.  This Court has screened the complaint and dismisses it for failure to state a claim.

**I.　　Pleading Requirements**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to § 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Plaintiff must set forth sufficient factual matter accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555. While factual allegations are accepted as true, legal conclusions are not. *Twombly*, 550 U.S. at 555.

Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." *Id.* at 555 (*citations omitted*). A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555-56 (*internal quotation marks and citations omitted*). To adequately state a claim against a defendant, Plaintiff must set forth the legal and factual basis for his claim.

**II.    Discussion**

   **A.    Facts**

Plaintiff was paroled from Kern Valley State Prison on November 26, 2006, following incarceration for a conviction of corporal injury to spouse (California Penal Code § 273.5) and false imprisonment. The victim was his former girlfriend, Kimberly Canada. As conditions of parole, Plaintiff was to have no contact with Canada or her family, participate in and complete a 52-week Batterer's Treatment Program, and complete a drug treatment program. Plaintiff was returned to prison for eleven months on February 20, 2007, for contact with a prohibited person,

obstruction of a Peace Officer, and marijuana use. He was again returned to prison on January 4, 2008, for cocaine use and failure to participate in drug treatment, and on June 9, 2008, for failing to report a change of address and failing a drug test. Plaintiff was again released on August 18, 2009.

At approximately 6:00 p.m. on August 29, 2009, Plaintiff arrived at the Executive Suites of Fresno. Because Plaintiff is disabled, Plaintiff's friend Michael Edwards and Edwards's friend, Eddie, helped Plaintiff up the stairs to Edwards's apartment, # 213. Plaintiff contends that he was visiting Edwards's apartment.

Police reports tell a different story. At about 11:47 p.m., after first calling apartment 213, Defendant Arthur Madrid, manager of the Executive Suites apartments, called police and reported Plaintiff to be a suspicious person acting strangely in the complex. Fresno Police Officers L. Leibee and Aranas responded. Madrid reported that he had observed Plaintiff loitering on the grounds and acting suspiciously. When Madrid confronted Plaintiff, Plaintiff was not forthcoming about his presence at the apartments. Eventually, Madrid saw Plaintiff enter the apartment of Michael Edwards, who lived alone.[1] When Madrid telephoned Edwards's apartment, someone other than Edwards answered and said that Edwards was not available. When Madrid advised the individual of his intent to call police, the individual replied, "I don't give a fuck."

The officers looked through the apartment's open windows but saw no one. When no one responded to the officers' knocks and announcements, Madrid gave Leibee his pass key, and the officers opened the apartment door. After the officers announced themselves several times, Plaintiff emerged from the living room. No one else was in the apartment. Aranas identified himself and directed Plaintiff to walk toward him. Plaintiff refused and stated that he was staying in the apartment. Aranas informed Plaintiff that he needed to leave the apartment to confirm he was staying there. Plaintiff again refused, and walked into the living room, out of sight. The officers advised Plaintiff that they would not leave until Plaintiff left the apartment. At some

---

[1] The terms of Edwards's rental agreement do not permit sublets or live-in guests. Edwards later confirmed that he had given Plaintiff permission to stay in the apartment but had not advised Madrid.

3

point, the officers became alarmed at Plaintiff's erratic behavior and drew their guns.

When Plaintiff finally entered the hallway, the officers directed Plaintiff to drop to his knees. He refused. They then directed him to lie on the ground. He again refused. Aranas then took Plaintiff down to the ground in a single quick motion. When Plaintiff continued to resist, Aranas employed a carotid restraint and took Plaintiff into custody for resisting arrest (California Penal Code § 148(A0(1)). Plaintiff maintains that his disability prevented him from complying with the officers' directions.

Plaintiff was handcuffed and transported to Community Medical Center for evaluation. Because of Plaintiff's erratic behavior, Aranas ordered a blood test.

Plaintiff was taken to Community Regional Medical Center where he remained until about 2:30 p.m. on Sunday, August 30, 2009.

On August 31, 2009, Plaintiff went to California Department of Corrections and Rehabilitation Fresno Parole Units #3-7 (the "parole office") to see Defendants unit supervisor Larry Robinson and Parol Agent Lilo Diaz. Plaintiff wanted to see why he had not received funds for medical treatment, medications, transportation, housing, food, and clothing following his release from Kern Valley State Prison after a ten month parole violation term for failing to report a change of address and failing a drug test. After waiting over two hours, Diaz called Plaintiff into the office, where Diaz and Defendant Michael Peterka, a Fresno police officer, grabbed Plaintiff and forced his hands behind his back. Plaintiff protested that he had recent neck surgery, could not place his hands behind his back, and was in severe pain. Advising Plaintiff that he was not supposed to have been released from the hospital because of his parole status, Peterka confiscated Plaintiff's cane, legal papers and materials, and the prior day's hospital release forms. Peterka took Plaintiff into custody for violating parole by resisting arrest. Plaintiff's parole was subsequently revoked.

On September 4, 2009, Diaz received confirmation that Plaintiff tested positive for cocaine. Plaintiff denies having taken cocaine.

While Plaintiff was in custody, the parole office received Plaintiff's mail from the U.S. District Court for the Eastern District of California and from the U.S. Court of Appeal for the

4

1  ///

2  Ninth Circuit but failed to forward it to Plaintiff.  As a result, Defendants Robinson, Diaz, and
3  Lisa Curtis denied Plaintiff access to the courts.

      **B.**    **Defendant Arthur Madrid**

5        Plaintiff contends that Defendant Arthur Madrid "knowingly and willingly committed
6  perjury and defamed the character of Plaintiff."  Not only is the nature of Plaintiff constitutional
7  claim against Madrid unspecified, a private party such as Madrid generally is not considered to act
8  under color of state law.  *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991), *cert. denied*, 503
9  U.S. 938 (1992).  *See also Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161
10  (9th Cir. 2003).  Plaintiff alleges no basis for excepting Madrid from this generally applicable rule.
11        Perjury and defamation are not violations of the federal constitution. Plaintiff fails to state
12  a cognizable claim against Defendant Madrid.

      **C.**    **Eleventh Amendment Immunity**

14        The Eleventh Amendment bars suits for money damages in federal court against a state, its
15  agencies, and state officials in their official capacities."  *Aholelei v. Dept. of Public Safety*, 488
16  F.3d 1144, 1147  (9th Cir.), *cert. denied*, 128 S.Ct. 441 (2007)(*citations omitted*).  Because CDCR
17  is a state agency entitled to Eleventh Amendment immunity, Plaintiff may not sue it in federal
18  court.  *Id.  See also Natural Resources Defense Council v. California Dep't of Transp.*, 96 F.3d
19  420, 421 (9th Cir. 1996); *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th
20  Cir. 1991), *cert. denied*, 503 U.S. 938 (1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).
21  Similarly, as an entity that is part of CDCR, the Fresno Parole Units #3-7 is also protected by the
22  Eleventh Amendment.  *Mitchell v. Los Angeles Comm. College Dist.*, 861 F.2d 198, 201 (9th Cir.
23  1988), *cert. denied*, 490 U.S. 1081 (1989).   Accordingly, Plaintiff may not advance claims against
24  CDCR and the parole office as a matter of law.

25        The Eleventh Amendment also protects Defendants Robinson, Curtis, and Diaz from suits
26  in their official capacities.  *Aholelei*, 488 F.3d at 1147; *Doe v. Lawrence Livermore Nat'l Lab.*,
27  131 F.3d 836, 839 (9th Cir. 1997).  Each individual Defendant may be sued for wrongdoing in his
28  personal capacity, however.  *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Ashker v. California Dep't of*

*Corr.*, 112 F.3d 392, 394-95 (9th Cir.), *cert. denied*, 522 U.S. 863 (1997). Plaintiff does not indicate whether he intends to sue Robinson, Curtis, and Diaz in their official or personal capacity.

### D. Supervisory personnel

Plaintiff names as a defendant Larry Robinson, a parole supervisor. Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*. *Taylor*, 880 F.2d at 1045. For defendants in supervisory positions, a plaintiff must specifically allege a causal link between each defendant and his claimed constitutional violation. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To state a claim for relief under § 1983 for supervisory liability, a plaintiff must allege facts indicating that each supervisory defendant either personally participated in the alleged deprivation of the plaintiff's constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or "implemented a policy so deficient that the policy 'itself is a deprivation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (*internal citations omitted*); *Taylor*, 880 F.2d at 1045.

### E. Eighth Amendment Claim: Cruel and Unusual Punishment

Plaintiff alleges that all Defendants subjected him to cruel and unusual punishment in the course of his arrest. The unnecessary and wanton infliction of pain on prisoners violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5(1992). Because Plaintiff alleges cruelty that occurred in the course of his arrest, however, his claim is properly analyzed under the Fourth Amendment.

Claims that law enforcement officers used excessive force in the course of an arrest, investigatory stop or other seizure of a citizen are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003), *cert. denied*, 542 U.S. 918 (2004). In evaluating whether a use of force was excessive, the Court must determine whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the

officers], without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). The analysis of whether a specific use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham*, 490 U.S. at 396; *Blankenhorn*, 485 F.3d at 477; *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007). "Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002).

Whether force is reasonable is judged from the perspective of a reasonable officer at the scene, not with the advantage of 20/20 hindsight. *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). Evaluating reasonableness includes allowing for the fact that police officers must often make split-second decisions about the appropriate amount of force to use in circumstances that are tense, uncertain, and rapidly evolving. Accordingly, a court must consider whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Scott v. United States*, 436 U.S. 128, 137-39 (1978); *Terry*, 392 U.S. at 21.

An objectively reasonable evaluation of the facts alleged simply do not support a claim the officers here used excessive force in the course of the initial arrest at the Executive Suites. Defendant Madrid, the apartments' manager, was concerned at the presence of a stranger in another person's apartment. Edwards admitted that, although guests were not permitted and he was required to advise Madrid, he had not done so. Plaintiff behaved erratically and evaded Madrid's questions about his purpose in being there. When Madrid called the apartment to check on the situation, Plaintiff responded evasively rather than forthrightly disclosing the situation. As a result, Madrid called police to ensure Edwards's safety. When police reached Edwards's apartment, Plaintiff neither answered the door not otherwise responded. After police opened the door, Plaintiff behaved erratically, moving into and out of sight, as one might do if he or she was hiding contraband or arming her-or himself. Plaintiff repeatedly refused to follow the officers' directions, ultimately refusing both to put his hands behind his back or to lie on the floor. The officers acted reasonably in subduing Plaintiff. Although Plaintiff was transported to the hospital,

7

it was because of his erratic behavior, which suggested he was under the influence of drugs or alcohol, not because of injuries incurred in the course of an unnecessary brutal arrest. Plaintiff alleges no such injuries, but only that he experienced pain due to his pre-existing condition.

The inclusion of various parole officers among the Defendants suggests that Plaintiff also intends to allege the use of unreasonable force in the course of his arrest at the parole office. No force, other than the uncomfortable cuffing of Plaintiff's hands behind his back, is alleged.

### F.     Denial of Access to Court

Plaintiff contends that Defendants' delay of his mail violated Plaintiff's right of access to the courts. Inmates have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *overruled in part on other grounds by Lewis*, 518 U.S. at 354. *Bradley v. Hall*, 634 F.3d 1276, 1279 (9th Cir. 1995); *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990) (per curiam). The right of court access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828; *see also Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999). To establish a violation of the right of access to the courts, a prisoner must establish that he has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and cannot be waived. *See Lewis*, 518 U.S. at 349; *Madrid*, 190 F.3d at 996.

The right of access to the courts is only a right to bring complaints to the federal court and not a right to discover potential claims or to litigate them effectively once they have been filed with the court. *See Lewis,* 518 U.S. at 354-55; *Madrid*, 190 F.3d at 995; *Cornett v. Donovan*, 51 F.3d 894, 898 (1995), *cert. denied sub nom Henry v. Caballero*, 518 U.S. 1033 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. Any misdirection of Plaintiff's mail following revocation of his parole is not within the constitutional right of court access.

In addition, Plaintiff himself was responsible for advising the Clerk of Court of his current address. Local Rule 83-183(b). Since Plaintiff knew of his pending cases and their status, he

8

///

reasonably should have advised the Clerk of his change of address and the effective date of his relocation to ensure that he received all communications from the court.

### III.     Conclusion and Order

The First Amended Complaint fails to state a claim upon which relief may be granted. Since the facts alleged in the complaint and documented in the various reports appended to the complaint cannot be interpreted to constitute a claim of unnecessary force incident to an arrest or a claim of denial of court access, allowing further amendment of the complaint would be unproductive.

Accordingly, this Court ORDERS that Plaintiff's First Amended Complaint be DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

**Dated:     April 2, 2010**                              /s/ Sandra M. Snyder
                                                          UNITED STATES MAGISTRATE JUDGE